IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID NORMAN TAYLOR, and
DEBRA LEE TAYLOR;

        Plaintiffs,

v.

GORILLA CAPITAL, INC., JOHN
HELMICK, and CASCADE TITLE, CO.;

        Defendants.

Case No. 6:18-cv-648-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiffs David and Debra Taylor received a loan backed by a deed of trust on their home. They bring this action against the alleged broker, lender and escrow agent involved in the making of the loan. Defendants each move to dismiss.

## BACKGROUND[1]

    The Taylors' son was involved in an auto finance business with an individual identified in the complaint as Jeremy Cruz. Compl. ¶ 11. Cruz had, at a point in the past, worked for defendant Gorilla Capital, a corporation that makes or invests in mortgage loans. Compl. ¶ 31. Gorilla Capital is run by Defendant John Helmick, who is described in the complaint as "a

---

[1] At the motion to dismiss stage, I assume the truth plaintiffs' allegations.

1 – OPINION AND ORDER

sophisticated lender, broker and real estate 'flipper' who has run Gorilla Capital since 1993."

Compl. ¶ 16. Helmick and Cruz are close friends. Compl. ¶ 9.

8.

Sometime prior to July 6, 2015, a Jeremy Cruz contacted Gorilla Capital and Helmick about a loan related to his business, Eugene Auto Finance. He proposed that Defendants give Plaintiffs a loan secured by a third lien on their principal residence but with the proceeds being used for purposes as directed by Cruz and Helmick.

* * * *

10.

On or about July 6, 2015, a loan was closed in escrow at Cascade Title for $90,000 with Helmick as the lender. The proceeds went partly to certain creditors of Eugene Auto Finance, and $39,800.35 was distributed to Cruz personally. Within days, Cruz lend [sic] $35,000 of the loan proceeds to Gorilla Capital.

11.

Immediately after closing, Taylor was contacted by their son, a business partner with Cruz. He advised them that the payments to Eugene Auto Finance creditors were not as he agreed with Cruz, and that the distribution to Cruz should have been capital for Eugene Auto Finance. Taylor immediately went back to Cascade Title to rescind the loan. The closing occurred around 5 pm PST and Taylor found the doors locked. A Cascade employee came out to talk to Taylor and advised them to call the next day. The next Taylor [sic] called Cascade Title and demanded that the loan be rescinded. Cascade title employees told Taylor that the loan already funded and could not be rescinded.

12.

Within three days after closing, Taylor sent a written rescission notice to Helmick and Gorilla Capital via email, as this was the ordinary course of communications.

13.

Cascade Title employees, prior to closing, confirmed that funding would not occur until three (3) days after closing.

* * * *

15.

> Taylor never provided a loan application, made any financial disclosures nor provided evidence of an ability to repay the loan. The loan is an asset loan, relying only on the value of the collateral as a basis to foreclose.
>
> 16.
>
> Helmick is a sophisticated lender, broker and real estate 'flipper' who has run Gorilla Capital since 1993. Helmick as [sic] created multiple securitized real estate investment trusts, a form of a regulated security. On information and belief, Defendants have a long history of working in concert in lending, as well as buying and selling real estate. Thus, any statute of limitation applicable to this action should be tolled in equity.
>
> 17.
>
> All communications with Helmick, before and after closing, were by email and used Helmick's Gorilla Capital email. All emails from Helmick were signed by Helmick as CEO of Gorilla Capital.
>
> 18.
>
> Taylor never made a single payment to Helmick and never ratified the loan after rescinding the loan. Taylor's [sic] received no benefit from the loan nor consideration for pledging the Property as collateral for the loan.

Compl.

Although the Taylors brought this action during their bankruptcy proceedings, I granted the motion for withdrawal of these claims from the bankruptcy case. ECF No. 5. As noted, defendants each move to dismiss the complaint.

## STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

While considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION[2]

Although the complaint does not distinguish the separate claims against the individual defendants, the Taylors now confirm that they bring claims one through four against Gorilla Capital and Helmick, and claim five, for breach of contract, against Cascade Title. In responding to Cascade Title's motion, the Taylors state claim five should have been brought as a breach of an express contract claim (rather than an implied contract). Because the Taylors seek leave to amend claim five to assert claims for breach of an express contract, breach of an oral modification, or, in the alternative, breach of fiduciary duty, Cascade's motion to dismiss, ECF No. 13, is DENIED as moot.[3]

Gorilla Capital and Helmick move to dismiss claims one through four. Those claims are for fraud and for violations of the Oregon Mortgage Lender Law (OMLL), the Dodd-Frank Act,

---

[2] The Taylors submitted several exhibits attached to their responses. At this stage, however, the court is limited to considering the complaint, any exhibits attached to the complaint, and any matters subject to judicial notice. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam). As the Taylors do not move for judicial notice, and as no exhibits are attached to the complaint (and none of the exhibits concern any documents explicitly referred to or relied upon by the complaint), the court does not consider the exhibits in resolving the pending motions.

[3] Plaintiffs' unopposed motion to substitute CTC Escrow Co. for Cascade Title, ECF No. 16, is GRANTED.

the Home Ownership and Equity Protection Act (HOEPA), the Truth in Lending Act (TILA), and the Real Estate Settlement Procedures Act (RESPA).

1. **FRAUD**

In addition to the allegations included above, the Taylors allege:

> Defendants, acting in concert, represented the loan as a consumer loan secured by a principal residence and, thus, subject to all state and federal requirements. Alternatively, Defendants omitted the material fact that the loan would not be a consumer loan but was instead a high risk asset based loan.
>
> * * * *
>
> Taylor was unable to afford the loan but was never advised properly as to the financial consequences of the loan, such as by [TILA or HOEPA] disclosures.

Compl. ¶ 20.

Rule 9(b) of the federal rules of civil procedure requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Gorilla Capital and Helmick argue the complaint fails to sufficiently allege the particular facts supporting the fraud claims. I agree.

The Taylors must specify "the who, what, when, where, and how" of the defendants' fraudulent conduct. *Vess v. Cib-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Merely alleging the defendants—the complaint is unclear as to which one—represented the loan as a consumer loan is not enough. "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* (quoting *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994)). The Taylors confuse matters by pleading the fraud claim in the alternative. *See* Compl., ¶ 20 (defendants represented the loan as a consumer loan or, in the alternative, "omitted the material fact that the loan would not be a consumer loan . . . .").

The Taylors argue they need not distinguish who made the statement (or who omitted making a statement) because Helmick is the CEO of Gorilla Capital. "Based on the nature of the relationship, Taylors do not need to distinguish between the two Defendants at this stage of the case because Helmick's statements are the Corporation's statements." Resp. 4; ECF No. 6. Even assuming this is correct, defendants correctly point out that the complaint is unclear as to whether Helmick or another employee or agent of Gorilla Capital made any fraudulent representation. Defendants cannot reasonably determine who made the statement—and therefore cannot respond to, or defend against, the allegation—because the complaint is silent as to when or where a defendant, or an agent of the defendant, made any statement. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-64 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but "require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.") (alterations in original) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998)).

The Taylors argue "Paragraph 17 further confirms . . . that all communications with Helmick were signed by Helmick as CEO of Gorilla Capital. Therefore, the "who" is sufficiently identified." Resp. 5. Paragraph 17 alleges, "All communications with Helmick, before and after closing, were by email and used Helmick's Gorilla Capital email. All emails from Helmick were signed by Helmick as CEO of Gorilla Capital." It is unclear, however, if there were 1000 emails with fraudulent representations or just one. The generic allegation that defendants "represented the loan as a consumer loan" fails to apprise defendants of the nature of the alleged fraud. The Taylors essentially allege that somewhere in some email from Helmick to the Taylors is some representation that this was a consumer loan. Rule 9, however, requires much more.

6 – OPINION AND ORDER

If an email forms the basis of the Taylors' fraud claims, the Taylors must specify what the email said, when it was sent, who sent it, and why it was fraudulent. *Vess*, 317 F.3d at 1106. Defendants are entitled of such specifics "so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

The complaint's failure to satisfy rule 9's heightened pleading standards is exemplified in the Taylors' response. For example, the Taylors argue that because the complaint alleges the parties are residents of, and do business in, Lane County, "It is a reasonable inference that the fraud alleged occurred in Lane County, Oregon. The 'where' is sufficiently plead." Resp. 6-7. Further, the Taylors state:

> Paragraphs 8 and 10 state the "when[.]" A loan was closed on July 6, 2015. The initial idea for the loan occurred some time prior to 2016, based on a non-party, Jeremy Cruz, contacting Gorilla Capital and Helmick. A reasonable inference is that the fraud occurred some time in reasonable proximity to July 6, 2015."

Resp. 7.

Alleging that some statement, made in some email at some point before some date was fraudulent, is not sufficient under rule 9 to allow defendants to adequately defend the charge. Rather, the Taylors' response appears to demonstrate that they are themselves unaware of any specific fraudulent statement supporting their claim.

The Taylors' alternative allegation of fraud—i.e., defendants' failure to tell the Taylors that the loan was not a consumer loan—fares no better. The Taylors are correct that an omission of a material fact may, in certain circumstances support a claim for fraud. *See Pollock v. D.R. Horton, Inc.-Portland*, 190 Or. App. 1, 20 (2003). But while the Taylors allege an omission of a material fact, they fail to allege any fiduciary relationship or that defendants had any duty to

speak. *See id.*; *see also Unigestion Holding, S.A. v. UPM Tech., Inc.* 160 F. Supp. 3d 1214, 1223 (D. Or. 2016) ("When fraud is based on silence or nondisclosure of a material fact, a party first must demonstrate that the defendant either (1) remained silent when the defendant had a duty to speak, or (2) assumed the obligation to make a full and fair disclosure of the whole truth by making a representation in the nature of a 'half-truth'." (internal quotations and footnote omitted)).[4]

As the Taylors fail to allege with sufficient particularity the requisite who, what, where, when and how of the defendants' fraudulent conduct, their claim for fraud fails under the heightened pleading standards of rule 9(b). *Vess*, 317 F.3d at 1106.

2. **The Oregon Mortgage Lender Law (OMLL)**

The Oregon Mortgage Lender Law, Or. Rev. Stat. 86A.095 *et seq.*, provides limited private causes of action. As relevant here, one may bring a private action under 86A.151 against a person that employs, or should have employed, a mortgage loan originator "if the person engages in a residential mortgage transaction in which the person . . . (b)(A)(i) Makes an untrue statement of a material fact; or (ii) Omits from a statement a material fact that would make the statement not misleading in light of the circumstances under which the person makes the statement[.]" Or. Rev. Stat. 86A.151. A "mortgage loan originator" is one "who, for compensation or gain: (A) Takes an application for a residential mortgage loan; or (B) Offers or negotiates terms for a residential mortgage loan." Or. Rev. Stat. 86A.200(4)(a).

Considering the allegations described above, the Taylors state a claim that Helmick is a mortgage loan originator and "made untrue statements that the loan was subject to various

---

[4] "Actual concealment" is a third category of fraud under Oregon law. *Unigestion*, 160 F. Supp. 3d at 1223-34. The Taylors do not appear to seek recovery under an actual concealment theory.

8 – OPINION AND ORDER

consumer protection statues [sic], including TILA's right of recession [sic]." The Taylors further allege that Gorilla Capital brokered the loan to Helmick, that the Gorilla Capital and Helmick acted in concert and had a history of working in concert in lending, and that Helmick is the CEO of Gorilla Capital. As noted above, Helmick signed all emails with the Taylors as the CEO of Gorilla Capital. Although defendants appear to argue that the OMLL does not apply to Helmick (Helmick made the loan with his own money and he is not in the business of making loans secured by real estate, *see* Helmick Reply, 8) this argument is better suited for summary judgment.

3. **TILA, HOEPA, and Dodd-Frank**

In claim three, The Taylors bring three counts for violations of the TILA, HOEPA, and Dodd-Frank. Specifically, these counts include allegations of predatory lending, lack of disclosures, and rescission. The parties agree that the three acts apply only to "creditors." Defendants argue the Taylors have not alleged defendants are "creditors" under the acts and therefore fail to state a claim.

A "creditor" is one who both regularly extends consumer credit and is the person to whom the debt is initially payable to. 15 U.S.C. § 1602(g).

> A person regularly extends consumer credit only if it extended credit (other than credit subject to the requirements of § 1026.32) more than 25 times (or more than 5 times for transactions secured by a dwelling) in the preceding calendar year. . . . A person regularly extends consumer credit if, in any 12-month period, the person originates more than one credit extension that is subject to the requirements of § 1026.32 or one or more such credit extensions through a mortgage broker.

12 C.F.R. §1026.2(a)(17)(v).

Section 1026.32 outlines the requirements for a "high cost mortgage," i.e., any consumer credit transaction secured by the consumer's principal dwelling in which: (1) the annual

percentage rate exceeds the average prime rate by more than 8.5 percentage points for a subordinate-lien transaction. § 1026.32(a).

The question here is whether the Taylors have sufficiently alleged defendants either extended consumer credit: (1) more than 25 times if not secured by a dwelling; (2) more than 5 times if secured by a dwelling; or (3) on two or more "high cost mortgages." The Taylors allege the loan at issue "accrued interest at 20%." Compl. ¶ 31. The Taylors' mortgage thus qualifies as a "high cost mortgage." The Taylors also allege "Defendants are creditors who offer credit to consumers on a regular basis." *Id.* "Helmick and Gorilla Capital annual[ly] engage in making or investing in mortgage loans that subject them to the Dodd-Frank Act, HOEPA, and TILA and the implementing regulations." *Id.* Gorilla Capital and Helmick send "a substantial amount of business" to Cascade Title, an escrow company. Compl. ¶ 42. "Helmick and Gorilla Capital make or invest in mortgage loans in excess of $1,000,000 annually." Compl. ¶ 41.

These allegations, taken together, adequately allege that defendants made either: (1) 5 other consumer credit transactions secured by a dwelling; or (2) one other high cost mortgage in the 12 months surrounding the high cost mortgage defendants made to the Taylors. Defendants take issue with the fact that the Taylors do not differentiate between the loans made by Gorilla Capital and those made by Helmick. That argument, however, is better left for summary judgment. The complaint adequately alleges Gorilla Capital and Helmick are "creditors."

The parties also disagree with respect to the statute of limitations on the rescission claim. This is an unsettled area of the law, and district courts within the Ninth Circuit have reached different conclusions. *Compare Hoang v. Bank of America*, 2017 WL 5559846 (W.D. Wa.) (using the one year limitations period of 15 U.S.C. §1640(e) for rescission claims), *with Paatalo v. JP Morgan Chase Bank*, 146 F. Supp. 3d 1239 (D. Or. 2015) (finding rescission claim brought

10 – OPINION AND ORDER

seven years after loan was timely). However, at this point, this court need not wade into the murky waters of rescission claims post *Jesinoski v. Countrywide Home Loans*, 135 S. Ct. 790 (2015). A party has a right to rescind any subject loan[5] the latter of: (1) three business days after the loan; or (2) the delivery of the required rescission forms and disclosures. 15 U.S.C. § 1635(a). Even in the absence of any disclosures, the right to rescind expires three years after the consummation of the loan. 15 U.S.C. § 1635(f).

The Taylors allege they have "a general right to rescind within 3 days after certain events have occurred, including Defendants provision of material disclosure and rescission forms. **No disclosures or forms have ever been provided to Taylor.**" Compl. ¶ 37 (emphasis added). The Taylors filed this action less-than three years after consummation of the loan. Assuming the loan was in fact a subject loan, and assuming the Taylors never received any disclosures or rescission forms, their claim could be timely.

4. **RESPA**

Gorilla Capital and Helmick move to dismiss the RESPA claim, arguing the Taylors did not state a claim under RESPA's anti-steering provision. I agree. The Taylors allege:

> Defendants violated RESPA's prohibition on steering borrowers to an escrow company of Helmick's choice. This was done as Defendants, acting in concert, knew that no other title company would close the loan without compliance with RESPA, TILA, HOEPA, Dodd-Frank, and OMLL. Cascade Title receivers [sic] a substantial amount of business from Gorilla Capital and Helmick.

Compl. ¶ 42.

Under RESPA, "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service involving a federally related mortgage loan

---
[5] The parties disagree on, and this case turns largely on, whether the loan at issue was in fact a subject loan.

shall be referred to any person." 12 U.S.C. § 2607(a). Simply doing "a substantial amount of business" with a certain escrow company does not result in a violation of § 2607. And while the Taylors attempt to conflate "thing of value" with the implicit allegation that Cascade Title agreed to act as the escrow agent under an agreement that it would not be required to comply with any disclosure requirements, this argument fails as it is the creditor, not the escrow agent, with the duty to provide disclosures. *See* 15 U.S.C. § 1631(a) ("a creditor or lessor shall disclose to the person who is obligated on a consumer lease or a consumer credit transaction the information required under this subchapter."). As the "thing of value" must include "any payment, advance, funds, loan, service, or other consideration," 12 U.S.C. § 2602(2)[6], the Taylors fail to state a claim under RESPA's anti-kickback provision.

## CONCLUSION

Defendants' motions to dismiss are granted in part. Plaintiffs' RESPA and fraud claims are dismissed, without prejudice. Plaintiffs' motion for leave to amend the claim against Cascade Title is granted. Plaintiffs are granted 14 days leave to file an amended complaint.

IT IS SO ORDERED.

DATED this 28th day of June, 2018.

                                                                    /s/ Michael McShane
                                                                     Michael McShane
                                                      United States District Judge

---

[6] Although "thing of value" is "broadly defined," the definition does not stretch so far as alleged by the Taylors. *See* 12 C.F.R. § 1024.14(d) (defining "thing of value" as including, "without limitation, monies, things, discounts, salaries, commissions, fees, duplicate payments of a charge, stock, dividends, distributions of partnership profits, franchise royalties, credits representing monies that may be paid at a future date, the opportunity to participate in a money-making program, retained or increased earnings, increased equity in a parent or subsidiary entity . . . .").

12 – OPINION AND ORDER